IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TCS John Huxley America, Inc.,<br>TCS John Huxley Europe Limited,<br>TCS John Huxley Asia Limited, and<br>Taiwan Fulgent Enterprise Co., Ltd.,<br><br>                       Plaintiffs,<br><br>     vs.<br><br>Scientific Games Corporation,<br>Bally Technologies, Inc., and<br>Bally Gaming, Inc.,<br><br>                 Defendants. | Civil Action No. 1:19-CV-01846<br><br>The Honorable John R. Blakey |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Craig C. Martin
David Jimenez-Ekman
Timothy J. Barron
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Tel: 312.222.9350
cmartin@jenner.com
djimenez-ekman@jenner.com
tbarron@jenner.com

Ian H. Gershengorn (*pro hac vice* to be filed)
Ishan K. Bhabha (*pro hac vice* to be filed)
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Tel: 202.639.6000
igershengorn@jenner.com
ibhabha@jenner.com

April 10, 2019

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

STATEMENT OF THE CASE.................................................................................................2

     A.     The Parties ....................................................................................................2

     B.     Defendants' Patents and Litigation .........................................................3

ARGUMENT ...........................................................................................................................4

I.     PLAINTIFFS' CLAIMS ARE BARRED BY THE SHERMAN ACT'S FOUR-YEAR STATUTE OF LIMITATIONS. .............................................................................4

     A.     Plaintiffs' Claims Accrued Outside of the Limitations Period. ..............................4

     B.     Plaintiffs' Allegations of "Fraud" Cannot Salvage Their Untimely Claims............7

II.     TAIWAN FULGENT'S CLAIMS ARE BARRED BY THE SETTLEMENT AGREEMENT IT SIGNED WITH SHUFFLE MASTER, INC. IN 2010. .....................11

III.     TCS LACKS ANTITRUST STANDING. .......................................................................13

CONCLUSION........................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Al George, Inc. v. Envirotech Corp.*,
939 F.2d 1271 (5th Cir. 1991) ................................................................4

*Associated General Contractors of California, Inc. v. California State Council of
Carpenters*,
459 U.S. 519 (1983)................................................................14, 15

*Bodie–Rickett & Assocs. v. Mars, Inc.*,
957 F.2d 287 (6th Cir.1992) ................................................................14

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 20 (1993)................................................................15

*Brooks v. Ross*,
578 F.3d 574 (7th Cir. 2009) ................................................................5

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977)................................................................14

*Clow Corp. v. Witco Chem. Corp.*,
1985 WL 227 (N.D. Ill. Jan. 10, 1985) ................................................................8

*Cohn v. Guaranteed Rate Inc.*,
2016 WL 147884 (N.D. Ill. Jan. 13, 2016) (Blakey, J.) ................................................................12

*Collins v. Village of Palatine*,
875 F.3d 839 (7th Cir. 2017) ................................................................10

*Dasgupta v. University of Wisconsin Bd. Of Regents*,
121 F.3d 1138 (7th Cir. 1997) ................................................................6

*Dayco Corp. v. Goodyear Tire & Rubber Co.*,
523 F.2d 389 (6th Cir. 1975) ................................................................7, 11

*Farag v. Health Care Service Corporation*,
2017 WL 2868999 (N.D. Ill. July 5, 2017)................................................................6, 8

*Freedom Holdings, Inc. v. Cuomo*,
592 F. Supp. 2d 684 (S.D.N.Y. 2009)................................................................14

*G.K.A. Beverage Corp. v. Honickman*,
55 F.3d 762 (2d Cir. 1995)................................................................13

*Henson v. CSC Credit Servs.*,
  29 F.3d 280 (7th Cir. 1994) ...................................................................................8

*Indus. Representatives, Inc. v. CP Clare Corp.*,
  74 F.3d 128 (7th Cir. 1996) .................................................................................12

*Int'l Business Machs. Corp. v. Platform Sols., Inc.*,
  658 F. Supp. 2d 603 (S.D.N.Y.2009)...................................................................14

*Klehr v. A.O. Smith Corp.*,
  521 U.S. 179 (1997)...............................................................................................7

*Little Caesar Enterprises, Inc. v. Smith*,
  895 F. Supp. 884 (E.D. Mich. 1995)......................................................................5

*Logan v. Wilkins*,
  644 F.3d 577 (7th Cir. 2011) ..................................................................................7

*Lumpkin v. Envirodyne Industries, Inc.*,
  933 F.2d 449 (7th Cir. 1991) ................................................................................12

*Magpiong v. Superdry Retail LLC*,
  304 F.Supp.3d 983 (D. Nev. 2018)......................................................................13

*MCM Partners, Inc. v. Andrews-Bartlett & Associates, Inc.*,
  161 F.3d 443 (7th Cir. 1998) ................................................................................13

*Metropolitan Housing Development Corp. v. Village of Arlington Heights*,
  616 F.2d 1006 (7th Cir. 1980) ..............................................................................12

*Minn-Chem, Inc. v. Agrium, Inc.*,
  683 F.3d 845 (7th Cir. 2012) ..................................................................................5

*Motorola Mobility LLC v. AU Optronics Corp.*,
  775 F.3d 816 (7th Cir. 2014) ..................................................................................5

*P & M Services, Inc. v. Gubb*,
  2008 WL 4185903 (E.D. Mich. Sept 8, 2008), *aff'd*, 372 F. App'x 613 (6th
  Cir. 2010) ................................................................................................................6

*Pace Indus., Inc. v. Three Phoenix Co.*,
  813 F.2d 234 (9th Cir. 1987) ..............................................................................4, 6

*Parks America, Inc. v. Harper*,
  2016 WL 4082312 (Nev. July 28, 2016) ..............................................................13

*Pocahontas Supreme Coal Co., Inc. v. Bethlehem Steel Corp.*,
  828 F.2d 211 (4th Cir. 1987) ..................................................................................7

*The Power Co. v. Henry*,
    130 Nev. 182 (Nev. 2014).................................................................................13

*Robert W. Karr & Assocs., Ltd. v. Novoselsky*,
    2008 WL 4865573 (N.D. Ill. July 14, 2008)......................................................12

*SD3 II LLC v. Black & Decker (U.S.) Inc.*,
    888 F.3d 98 (4th Cir. 2018) .................................................................................8

*Serfecz v. Jewel Food Stores*,
    67 F.3d 591 (7th Cir. 1995) .........................................................................14, 15

*Sw. Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n*,
    830 F.2d 1374 (7th Cir. 1987) ...........................................................................15

*United States v. Lewis*,
    411 F.3d 838 (7th Cir. 2005) ...............................................................................5

*VKK Corp. v. National Football League*,
    244 F.3d 114 (2nd Cir. 2001)..............................................................................13

*Willmar Poultry Co. v. Morton-Norwich Prod., Inc.*,
    520 F.2d 289 (8th Cir. 1975) ...............................................................................7

*Yassan v. J.P. Morgan Chase and Co.*,
    708 F.3d 963 (7th Cir. 2013) .............................................................................12

*Z Technologies Corp. v. Lubrizol Corp.*,
    753 F.3d 594 (6th Cir. 2014) ...............................................................................6

*Zapp v. United Transp. Union*,
    879 F.2d 1439 (7th Cir. 1989) ...........................................................................10

## STATUTES

15 U.S.C. § 6a(1) ........................................................................................................5

15 U.S.C. § 15b..........................................................................................................4

## OTHER AUTHORITIES

Areeda and Hovenkamp, Antitrust Law ..........................................................4, 6, 7

David Steinman & Danielle Fitzpatrick, *Antitrust Counterclaims in Patent
    Infringement Cases: A Guide to Walker Process and Sham-Litigation Claims*,
    10 Tex. Intell. Prop. L.J. 95 (2001)....................................................................10

## INTRODUCTION

Plaintiffs Taiwan Fulgent and its distributor, TCS John Huxley ("TCS"), bring this Sherman Act complaint alleging that defendants filed "sham" patent litigation in order to exclude Taiwan Fulgent's automatic card shuffler from the market. Plaintiffs' claims must be dismissed. Their claims all expired long ago, and settled principles regarding statutes of limitations, contractual release, and standing prevent plaintiffs from reviving them here.

Consider first the timeliness of the claims. It is bedrock law that claims based on "sham" or fraudulent litigation accrue when the litigation is filed—the violation does not "continue" for statute of limitation purposes as the litigation proceeds or the effects of the litigation are felt. Here, the relevant patent litigation was filed against Taiwan Fulgent in 2009, nearly a decade ago, and against TCS in 2012. Plaintiffs' claims thus fall outside the Sherman Act's four-year limitations period.

Plaintiffs cannot erase this fatal flaw from the face of their complaint. Plaintiffs point, for example, to other lawsuits defendants filed against other unrelated parties. But those other lawsuits do not solve plaintiffs' problem: no lawsuit identified in the complaint was filed after 2012.

Nor do plaintiffs' allegations of "fraud" on the U.S. Patent and Trademark Office ("PTO") excuse their failure to sue. The core facts constituting the so-called fraud on the PTO were publicly available and known to plaintiffs years before the limitations period expired. Indeed, the exhibits attached to defendants' 2009 complaint against Taiwan Fulgent disclose on their face the prior art that Taiwan Fulgent alleges should have been disclosed to the PTO. The same is true for the complaint defendants filed against TCS in 2012. Whether or not defendants engaged in "inequitable conduct" by failing to disclose that information to the PTO in an appropriate fashion—an issue the parties dispute and that is outside the scope of this motion—there is no

1

reasonable dispute that Taiwan Fulgent and TCS were on notice years ago of sufficient public-record material to raise the allegations of fraud that form the basis of their complaint now.

Each of the plaintiffs, moreover, faces an independent bar to relief. Taiwan Fulgent signed a settlement agreement with defendants to resolve the 2009 litigation that mutually released "all claims" "whether known or unknown, asserted or unasserted." Taiwan Fulgent could have alleged a Sherman Act sham litigation claim at that time, and the broad language of the agreement plainly released any such claim. Having sought, received, and benefitted from the resolution of the litigation, Taiwan Fulgent cannot now deprive defendants of the benefit of the same bargain.

For TCS, the bar is lack of antitrust standing. TCS is a distributor of Taiwan Fulgent's product—it is not itself a competing manufacturer of automated card shufflers—and settled law makes clear that distributors lack standing to bring antitrust claims for monopoly harms allegedly caused in the market for the products they distribute. As a distributor, TCS thus has the wrong injury (if any): there is no allegation that defendants sought to monopolize the market for the distribution services that TCS is alleged to provide. And TCS is the wrong party: just like employees, landlords and utilities, TCS is not itself a competitor but instead merely has a commercial relationship with an excluded competitor. That is not enough for antitrust standing.

The motion to dismiss should be granted.

## STATEMENT OF THE CASE

### A.     The Parties

Defendants are three companies involved in supplying the global gaming market and, through subsidiaries branded as "Shuffle Master" or "SHFL," are the market leader in the manufacture of automatic card shufflers.[1] Since beginning production of automatic shufflers in

---

[1] Plaintiffs have referred to defendants collectively as "SHFL"; defendants will do so as well.

the early 1990s, SHFL has been a leader in innovation and technological development, and it now has a robust intellectual property portfolio, with over 2,500 worldwide patents, trademarks, and copyrights granted and pending.

Plaintiff Taiwan Fulgent manufactures the "A Plus shuffler"—an automatic card shuffler that competes with SHFL's products. In 2009, SHFL sued Taiwan Fulgent alleging that Taiwan Fulgent had violated three of SHFL's patents. The parties settled the lawsuit in 2010, entering into an agreement through which Taiwan Fulgent agreed to refrain from selling the A Plus shuffler, or any equivalent shuffler, in the United States for three years. Taiwan Fulgent has made no attempt to sell its A Plus shuffler, or any equivalent product, in the United States since that time.

Plaintiff TCS is a global gaming supply group and, as relevant here, has been the exclusive U.S. and worldwide distributor for the A Plus shuffler series since 2014. Amended Complaint ("FAC") ¶ 15. In 2012, SHFL filed a lawsuit alleging that TCS's efforts to distribute the A Plus shuffler infringed four of SHFL's patents. *Id.* ¶ 37. As with the Taiwan Fulgent suit, the parties eventually settled, and TCS agreed not to show the A Plus shuffler at an upcoming trade show and not to represent to the public that it was selling the A Plus shuffler in the U.S. *Id.* ¶ 40.

**B.     Defendants' Patents and Litigation**

Plaintiffs make various lengthy allegations regarding the patents defendants have acquired over the past decade and the litigation defendants have pursued to protect this valuable intellectual property. Only one point, however, is relevant to this motion.

Plaintiffs identify six lawsuits in which defendants have sought to protect their intellectual property:

- A declaratory judgment action filed by a non-party here, CARD, against SHFL on May 6, 2003 and a counterclaim filed by SHFL on August 25, 2003. *Id.* ¶ 93. The lawsuit resulted in a settlement. *Id.* ¶ 98.

- A suit filed by SHFL on October 5, 2004 against a non-party VendingData resulting in a grant of summary judgment in VendingData's favor. *Id.* ¶ 101.
- A suit filed by SHFL on November 11, 2009 against Taiwan Fulgent resulting in Taiwan Fulgent's agreeing not to enter the U.S. market for three years. *Id.* ¶¶ 33, 34.
- A suit filed by SHFL in early 2012 against TCS resulting in a judgment for SHFL and injunction prohibiting TCS from marketing or selling in the South African market. *Id.* ¶¶ 30, 36.
- A suit filed by SHFL on September 14, 2012 against TCS resulting in TCS's agreement not to show the A Plus shuffler at an upcoming trade show and not to represent it was selling the A Plus shuffler in the U.S. market. *Id.* ¶¶ 37, 40.
- A suit filed on October 12, 2012 against a non-party DigiDeal. *Id.* ¶¶ 41, 43.

As this list makes clear, the most recent lawsuit plaintiffs cite in the complaint was initiated in October 2012.

## ARGUMENT

I.  **PLAINTIFFS' CLAIMS ARE BARRED BY THE SHERMAN ACT'S FOUR-YEAR STATUTE OF LIMITATIONS.**

A.  Plaintiffs' Claims Accrued Outside of the Limitations Period.

Under the Sherman Act, actions are barred "unless commenced within four years after the cause of action accrued." 15 U.S.C. § 15b. For claims alleging a defendant filed anticompetitive litigation to clear a market of competitors, the claim accrues when the alleged anticompetitive lawsuit was filed or served on a defendant. *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987); *see also Al George, Inc. v. Envirotech Corp.*, 939 F.2d 1271, 1275 (5th Cir. 1991); Areeda and Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application, ¶ 320 ("[T]he infringement suit itself causes immediate injury and is clearly known to the most likely plaintiff, the infringement defendant who is presumably ousted from the market."). Although complaints typically need not address affirmative defenses, an argument that a claim falls outside of the statute of limitations may be raised in a motion to dismiss if "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense."

*United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005); *see, e.g.*, *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (dismissing on statute of limitations grounds). That is the case here.

Plaintiffs filed the amended complaint in March 18, 2019, and assert injury based on allegedly sham litigations defendants filed against Taiwan Fulgent in 2009, *see* FAC ¶¶ 33–35, and TCS in 2012, FAC ¶¶ 36–37. It is undisputed that these lawsuits were filed years before March 18, 2015, four years prior to the date the amended complaint was filed.[2] Moreover, plaintiffs identify three additional lawsuits in which defendants, but not plaintiffs, were parties. *See supra* pages 3–4. Even if lawsuits against unrelated third-parties could somehow extend plaintiffs' time to sue for their own harm arising from their own litigation, *but cf.*, *Little Caesar Enterprises, Inc. v. Smith*, 895 F. Supp. 884, 897 (E.D. Mich. 1995) (holding that conduct directed at other distributors did not restart limitation period for plaintiff), the last of those suits was filed in 2012, well outside of the limitations period.

Plaintiffs cannot remedy their failure to bring their claims within the Sherman Act's four-year limitations period by alleging that defendants engaged in continuing antitrust violations either during the course of the allegedly "sham" litigations or through the maintenance of high prices for SHFL's card shufflers. *See* FAC ¶¶ 46–49. To plead a continuing violation sufficient to restart a statute of limitations, the alleged conduct must: (1) "be a new and independent act that is not

---

[2] One of these lawsuits, brought in South Africa against TCS Africa, FAC ¶ 13, is irrelevant even beyond the fact that it was initiated outside of the limitations period. Allegedly anticompetitive conduct in foreign countries does not fall within the ambit of the Sherman Act unless such conduct has a "direct, substantial, and reasonably foreseeable effect" on domestic commerce, imports, or exports. 15 U.S.C. § 6a(1); *see Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 860 (7th Cir. 2012). And the Seventh Circuit has held that when a firm's foreign subsidiary is harmed by price-fixing activities in a foreign market and then passes the harm on to the parent firm who sells in the United States, the foreign harm cannot be the basis for a Sherman Act claim. *See Motorola Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816, 820–21 (7th Cir. 2014).

merely a reaffirmation of a previous act;" and (2) "inflict new and accumulating injury on the plaintiff." *Pace*, 813 F.2d at 238 (9th Cir. 1987); *see also Dasgupta v. University of Wisconsin Bd. Of Regents*, 121 F.3d 1138, 1139 (7th Cir. 1997); *Farag v. Health Care Service Corporation*, 2017 WL 2868999, *9 (N.D. Ill. July 5, 2017). Plaintiffs have not pleaded, and cannot plead, such conduct or injury here.

As courts have recognized, "[t]he continuation of a sham litigation does not constitute a continuing violation of antitrust laws." *P & M Services, Inc. v. Gubb*, 2008 WL 4185903, at *6 (E.D. Mich. Sept 8, 2008), *aff'd*, 372 F. App'x 613 (6th Cir. 2010). The reason for this is obvious: it is the *initiation* of a lawsuit that allegedly drives a competitor from the market and thus constitutes the anticompetitive act. Nor does an allegation of continuing "impact" from a litigation on prices suffice. Just as the limitations period for a suit against a monopolist alleged to have engaged in an anticompetitive merger does not restart every time prices are increased—even though "the plaintiff may have suffered, and the defendant may have benefitted" from the additional price increase, *Z Technologies Corp. v. Lubrizol Corp.*, 753 F.3d 594, 600–03 (6th Cir. 2014) (internal quotations omitted)—any anticompetitive harm from sham litigation occurs when the litigation is filed or served, and it does not reoccur every time an excluded competitor perceives an impact. Areeda and Hovenkamp, *supra*, ¶ 320c4 ("[T]he limitation period for monopolization by a wrongfully filed lawsuit runs from either the date the suit is filed or the date that the suit's defendant receives the process.").

As is plain from the face of the amended complaint, plaintiffs' basis for their claims of antitrust injury are "[d]efendants' wrongful enforcement of patents" through "sham litigation against Plaintiffs and other competitors." FAC ¶ 1. All of the lawsuits plaintiffs identify were initiated prior to March 15, 2015. Their claims are thus time-barred.

6

B.      Plaintiffs' Allegations of "Fraud" Cannot Salvage Their Untimely Claims.

Nor can plaintiffs escape their time bar by invoking any "fraudulent concealment" on the part of defendants.  "[T]he party alleging fraudulent concealment must plead the circumstances giving rise to it with particularity.  Three elements must be pleaded in order to establish fraudulent concealment:  (1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts."  *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975).  Thus, it is not enough for plaintiffs merely to allege some fraud or even some intentional concealment by the defendants; instead, to prevail, plaintiffs must show they "neither knew nor, in the exercise of due diligence, could reasonably have known of the offense."  Areeda and Hovenkamp ¶ 320; *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 195–96 (1997); *see also Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011) (affirming dismissal of complaint as untimely notwithstanding allegation that defendants "actively concealed" the conspiracy).

Two points inform the fraudulent concealment analysis.  *First*, the existence of publicly-available information about the alleged misconduct defeats a fraudulent concealment claim.  *See, e.g.*, *Dayco*, 523 F.2d at 394 (Congressional hearings and FTC lawsuit "should have aroused [Plaintiff's] suspicions" regarding an alleged antitrust violation); *Willmar Poultry Co. v. Morton-Norwich Prod., Inc.*, 520 F.2d 289, 295-96 (8th Cir. 1975) (publicly-available tariff commission report defeated fraudulent concealment argument).  Courts have thus dismissed claims that were "necessarily discoverable upon simple inquiry and consultation of public records long before [the statutory period]."  *Pocahontas Supreme Coal Co., Inc. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218 (4th Cir. 1987).  Indeed, Judge Leinenweber recently granted on statute of limitations grounds a motion to dismiss a *Walker Process* claim of fraud on the PTO where the plaintiffs "nakedly

assert[ed]" they could not have learned about their claim until 2014, but the patent application and press release that formed the basis of the claim were "matters of public record" dating back to 2000. *Farag*, 2017 WL 2868999, at *8.

*Second*, it is not necessary for plaintiffs to know every piece of information that might support their claim. Rather, "[w]here a plaintiff knows of a pattern of particular actions that a defendant has taken against him, though the pattern's precise scope might be unclear and its exact legal ramifications uncertain, the plaintiff is on inquiry notice of his claim. Put another way, if the plaintiff (1) believes he might have been harmed and (2) knows who is responsible for that harm, then he is on inquiry notice to act." *SD3 II LLC v. Black & Decker (U.S.) Inc.*, 888 F.3d 98, 113 (4th Cir. 2018) (internal citations and quotations omitted); see *Clow Corp. v. Witco Chem. Corp.*, 1985 WL 227, at *1 (N.D. Ill. Jan. 10, 1985) (granting summary judgment on the statute of limitations, the court emphasized "the statute of limitations does not . . . wait to begin running until the plaintiff puts together a large set of puzzling and damaging business developments into a clear understanding that it was a victim of an antitrust conspiracy.").

Under this well-established case law, plaintiffs cannot allege that defendants fraudulently concealed the basis for any alleged antitrust claim. The face of the amended complaint and the public record patents referenced within it refute any such allegation. *See, e.g. Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (court may take judicial notice of matters of public record without converting motion to dismiss into motion for summary judgment).

Plaintiffs allege SHFL knew of three pieces of material prior art that SHFL should have disclosed, but did not disclose, to the PTO in connection with the '751 patent. The parties dispute this point, but that issue is irrelevant to this motion. What is relevant, and over which there can be no dispute, is that *plaintiffs* knew of this prior art well within the limitations period. That is because

that prior art was identified in the *first two pages* of the patents at issue in the very "sham" lawsuits that form the basis of plaintiffs' claims here. The facts that underlie plaintiffs' theories of fraudulent procurement and sham litigation thus were known (or should have been known) to Taiwan Fulgent and TCS more than four years before the filing of this lawsuit. At the very least, plaintiffs were on inquiry notice of their claims.

Some background will help to make this point clear. Plaintiffs identify three relevant pieces of prior art:

(1) the Roblejo '122 patent which, as plaintiffs describe it, "generally, but not completely, discloses various feature[]s of the Roblejo shuffler," FAC ¶ 69;

(2) the "Shuffler Art" compact discs that "included all of the declarations, depositions, brochure, technical drawings, videos and related information obtained in the *CARD* litigation on the prior art Nicoletti, Roblejo and Luciano Shufflers," *id.* ¶ 91; and

(3) SHFL's alleged October 1997 viewing of the prototype the "Roblejo shuffler," and a brochure related to the viewing, *id.* ¶¶ 79, 80.

That prior art was disclosed to Taiwan Fulgent and TCS in the allegedly sham litigation that is the basis for the current claims. Specifically, in the patent infringement litigation against both Taiwan Fulgent and TCS, SHFL sued for infringement of not only the '751 patent (the principal subject of plaintiffs' allegations that SHFL committed fraud on the PTO), but other patents as well. In its litigation against Taiwan Fulgent, those other patents included the '344, and '576 patents; in its litigation against TCS, those other patents included the '602, and '791 patents. FAC ¶¶ 104, 107.

Those other patents are critical here for two reasons: first, they were attached as exhibits to the complaints; and second, like other patents, they prominently displayed a list of relevant prior art. Here, these other patents contained in their list of prior art the Roblejo '122 patent and the

9

Shuffler Art compact discs. *See* Exs. B–E U.S. Patents 7,255,344, 7,322,576, 7,059,602, and 7,073,791 References Cited Sections. Indeed, as noted, this prior art was identified on the *first two pages* of the patents. Moreover, the Shuffler Art compact discs themselves included documents alleging that SHFL had discovered the Roblejo shuffler in October 1997 and was in possession of an associated brochure. FAC ¶ 91. Thus, by 2009 (for Taiwan Fulgent) and 2012 (for TCS), plaintiffs *at the very least* were on inquiry notice of the prior art they now claim SHFL wrongfully withheld.

In this light, plaintiffs' delay is inexcusable: instead of bringing timely claims asserting the same points they make now, plaintiffs waited for seven to nine years. This delay—which would bar suit here in any event—is all the more inexcusable given that plaintiffs are sophisticated global corporations who were represented by counsel in the prior lawsuits. Antitrust allegations are common counterclaims in patent litigation, and Taiwan Fulgent's and TCS's counsel could well have considered the very claims plaintiffs attempt to bring here. *See* David Steinman & Danielle Fitzpatrick, *Antitrust Counterclaims in Patent Infringement Cases: A Guide to Walker Process and Sham-Litigation Claims*, 10 Tex. Intell. Prop. L.J. 95 (2001) ("The antitrust laws have become the weapon of choice for defendants facing patent infringement claims. . . . patent holders should generally expect to face these expensive and potentially destructive claims brought as defensive measures against their patent infringement cases."). They did not. Those claims are now barred.

Sound public policy also supports this result. The purpose of a statute of limitations is to "protect defendants against stale or unduly delayed claims." *Collins v. Village of Palatine*, 875 F.3d 839, 845 (7th Cir. 2017) (quoting *Credit Suisse Secs. v. Simmonds*, 566 U.S. 221, 227 (2012)). To be sure, finality is not an absolute command. But exceptions to statutes of limitations are

construed narrowly, *see, e.g.*, *Zapp v. United Transp. Union*, 879 F.2d 1439, 1441 (7th Cir. 1989), and plaintiffs may bring otherwise non-timely suits only when a defendant's wrongful conduct precludes a plaintiff from discovering the operative facts leading to suit within the limitations period notwithstanding the exercise of reasonable diligence. *See Dayco Corp*, 523 F.2d at 394. No understanding of fraudulent concealment—narrow or broad—would excuse plaintiffs from failing to act on information contained both in the public records and in the operative documents from their own prior litigation. In that situation, the strong interest in finality prevails. Taiwan Fulgent and TCS simply cannot invoke an exception from the Sherman Act's clear time bar when they had all the information necessary to bring suit but chose to sleep on their rights.

II. **TAIWAN FULGENT'S CLAIMS ARE BARRED BY THE SETTLEMENT AGREEMENT IT SIGNED WITH SHUFFLE MASTER, INC. IN 2010.**

Taiwan Fulgent's claims are barred for an independent reason: it released these claims in their entirety in the February 2010 settlement agreement that ended SHFL's 2009 infringement suit against Taiwan Fulgent. *See* FAC ¶¶ 34, 105. The agreement's release provides:

> Except for each party's undertakings and obligations under this Agreement, each party hereby generally releases the other *for all claims*, liabilities and damages of any kind that either has or may have against the other, as of the date of this Agreement, *whether known or unknown, asserted or unasserted*, or accrued or unaccrued.

Ex. A ¶ 2 (emphasis added and referred to at FAC ¶ 105). The Amended Complaint asserts Defendants have had unlawful market power "since at least 2009," FAC ¶ 29, and that SHFL kept plaintiffs out of the market by using patents it fraudulently obtained during the early 2000s, *id.* ¶¶ 29, 72–90.[3] Each patent that SHFL allegedly procured by fraud and then used to sue

---

[3] Plaintiffs identify six patents asserted against them by defendants in litigation: '751 issued on July 8, 2003, with a reexamination certificate issued on July 24, 2013; '344 issued on August 14, 2007; '576 issued on January 29, 2008; '096 issued on July 3, 2001; '602 issued on June 13, 2006; and '791 issued on June 11, 2006. *See* FAC ¶¶ 61–62.

plaintiffs was procured well before the February 2010 Settlement Agreement and therefore any antitrust claims based on those patents—even if unknown—were resolved by that agreement.

That release disposes of Taiwan Fulgent's claim. As the Seventh Circuit has long-recognized, "[a] deal's a deal." *Indus. Representatives, Inc. v. CP Clare Corp.*, 74 F.3d 128, 132 (7th Cir. 1996). A court's failure to recognize a contract "can only destabilize the institution of contract, increase risk, and make parties worse off," *id.*, and that is particularly true in the context of settlement agreements, which serve to expeditiously resolve legal disputes and forestall unnecessary litigation. "The law generally favors and encourages settlements." *Metropolitan Housing Development Corp. v. Village of Arlington Heights*, 616 F.2d 1006, 1013 (7th Cir. 1980).

No other ground exists for refusing to enforce the agreement. This Court may consider a settlement agreement on a motion to dismiss when the agreement is "referred to in the complaint and . . . central to [a plaintiff's] claim." *Robert W. Karr & Assocs., Ltd. v. Novoselsky*, 2008 WL 4865573, at *2 (N.D. Ill. July 14, 2008). Indeed, this Court has granted motions to dismiss on the basis of a written release. *See, e.g.*, *Cohn v. Guaranteed Rate Inc.*, 2016 WL 147884, at *2 (N.D. Ill. Jan. 13, 2016) (Blakey, J.).[4] And nothing in state or federal law would preclude the enforcement of the deal Taiwan Fulgent struck. Nevada law provides the rule of decision for this agreement involving a Nevada corporation to resolve Nevada-based litigation, *see Lumpkin v. Envirodyne Industries, Inc.*, 933 F.2d 449, 457–58 (7th Cir. 1991) (federal law incorporates state law for assessing the validity of a release of federal statutory claims), and under Nevada law, the

---

[4] Defendants recognize the Court may treat this argument as a Rule 12(c) motion for judgment on the pleadings or Rule 12(d) motion for summary judgment. *See, e.g.*, *Yassan v. J.P. Morgan Chase and Co.*, 708 F.3d 963, 975 (7th Cir. 2013). Defendants invite the Court to consider this argument in whichever context it deems procedurally appropriate.

unambiguous language of a release is enforceable, including the "contractual release[] of unknown claims." *Magpiong v. Superdry Retail LLC*, 304 F.Supp.3d 983, 992 (D. Nev. 2018); *see also The Power Co. v. Henry*, 130 Nev. 182, 189 (Nev. 2014); *Parks America, Inc. v. Harper*, 2016 WL 4082312, at *1 (Nev. July 28, 2016).

Nor can Taiwan Fulgent evade the consequence of its release by pointing to litigation against other parties that post-dated the settlement. Even assuming Taiwan Fulgent could ever revive its own claims by relying on suits against other parties, it cannot do so here where it alleges at most a continuation of a claim that had fully accrued at the time of the release. As the courts of appeals have noted, "it is not uncommon . . . for a release to prevent the releasor from bringing suit against the releasee for engaging in a conspiracy that is later alleged to have continued after the release's execution." *VKK Corp. v. National Football League*, 244 F.3d 114, 126 (2nd Cir. 2001); *see also MCM Partners, Inc. v. Andrews-Bartlett & Associates, Inc.*, 161 F.3d 443, 448 (7th Cir. 1998) (finding post-release conduct clearly based on released claims and thus barred by release).

### III.  TCS LACKS ANTITRUST STANDING.

TCS's claims are barred for a different reason: as a distributor for Taiwan Fulgent's competing shuffler, it lacks antitrust standing. TCS does not allege (nor could it) that SHFL sought to monopolize or has a monopoly in the market for distribution services of the kind TCS is alleged to supply. And TCS is not a consumer or competitor in the market for card shufflers, but instead has only a commercial relationship with a competitor alleged to have been excluded from the shuffler market. That is not enough for standing.

Settled law makes clear that distributors lack antitrust standing. For example, in *G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 765 (2d Cir. 1995), distributors of bottled drinks sued a bottling company for allegedly driving a competitor out of business and causing economic harm

to the distributors. Affirming the dismissal of the complaint for lack of standing, the Second Circuit concluded "a party in a business relationship with an entity that failed as a result of an antitrust violation has not suffered the antitrust injury necessary for antitrust standing." *Id.* at 766; *Int'l Business Machs. Corp. v. Platform Sols., Inc.*, 658 F. Supp. 2d 603, 610–11 (S.D.N.Y.2009) (distributor lacked antitrust standing because injuries "all were derivative of [defendant's] actions vis-à-vis [other parties]"); *Freedom Holdings, Inc. v. Cuomo*, 592 F. Supp. 2d 684, 694 (S.D.N.Y. 2009) (plaintiffs, distributors and importers, "would lack antitrust standing"); *see also Bodie–Rickett & Assocs. v. Mars, Inc.*, 957 F.2d 287, 290–91 (6th Cir.1992) (concluding that broker of snacks and candies lacked standing to bring an antitrust action against snack and candy manufacturer where targets of alleged conspiracy, competing manufacturers and wholesale customers, were more direct victims). Those cases reflect the broader proposition, recognized by the Seventh Circuit, that a plaintiff that suffers only an indirect injury as a result of market restraint—such as a landlord unable to rent commercial real estate because a grocery store is attempting to block competitors from entry to the market—lacks standing to bring an antitrust action. *See Serfecz*, 67 F.3d at 598.

Unsurprisingly, that uniform case law is also consistent with Supreme Court precedent. In *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 538–43 (1983) ("*AGC*"), the Supreme Court identified two threshold tests a plaintiff must pass in order to demonstrate antitrust standing. *First*, the plaintiff must have suffered an "antitrust injury"—that is, an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *see also AGC*, 459 U.S. at 539. *Second*, a plaintiff must be the proper party to bring an action. Courts thus find antitrust standing for "those who, as

14

consumers or competitors, suffer immediate injuries with respect to their business or property, while excluding persons whose injuries were more indirectly caused by the antitrust conduct." *Serfecz*, 67 F.3d at 598 (quotation marks omitted).

Under *AGC*'s two-part inquiry, TCS lacks standing. TCS has suffered no antitrust injury. Defendants are not alleged to have monopolized the market for distributions services, the only market in which TCS competes. And as to the alleged market for automated card shufflers, TCS's interest is not in free competition, but rather in the success of one particular entity within that market, Taiwan Fulgent. But antitrust laws protect "competition, not competitors," *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 224 (1993), and any derivative economic harm TCS may have suffered as a result of Taiwan Fulgent's inability to sell card shufflers in the U.S. is simply not the type of injury "the antitrust laws were intended to forestall," *AGC*, 459 U.S. at 540. For similar reasons, TCS is not a proper party. It claims standing not as a consumer or competitor, but instead as one with a commercial relationship with a competitor. But that is not enough—otherwise, every landlord, employee or utility with a commercial relationship to Taiwan Fulgent could likewise bring a Sherman Act claim. *See Sw. Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n*, 830 F.2d 1374, 1376–78 (7th Cir. 1987) (no antitrust standing for "[m]erely derivative injuries sustained by employees, officers, stockholders, and creditors").

These cases impose an important limit on antitrust liability and "balance the interests of deterrence through private antitrust enforcement [with] avoidance of excessive treble damages litigation." *Serfecz*, 67 F.3d at 598. TCS is hardly the "part[y] who can most efficiently vindicate the purposes of the antitrust laws," least of all in a market in which it does not participate. *Id.*

## CONCLUSION

Defendants respectfully request the First Amended Complaint be dismissed with prejudice.

Dated: April 10, 2019        Respectfully submitted,


By: /s/ Craig C. Martin
     One of the Attorneys for Defendants

     Craig C. Martin
     David Jimenez-Ekman
     Timothy J. Barron
     JENNER & BLOCK LLP
     353 N. Clark Street
     Chicago, IL 60654-3456
     Tel: 312.222.9350
     cmartin@jenner.com
     djimenez-ekman@jenner.com
     tbarron@jenner.com

     Ian H. Gershengorn (pro hac vice to be filed)
     Ishan K. Bhabha (pro hac vice to be filed)
     JENNER & BLOCK LLP
     1099 New York Avenue, NW, Suite 900
     Washington, DC 20001-4412
     Tel: 202.639.6000
     igershengorn@jenner.com
     ibhabha@jenner.com

     *Attorneys for Defendants Scientific Games*
     *Corporation, Bally Technologies, Inc., and*
     *Bally Gaming, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on April 10, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.


*/s/ Craig C. Martin*
Craig C. Martin